We have the next case at the end, which is Atkins v. Edwards. The argument for the pallet. Please proceed. Good morning, your honors. May it please the court. My name is Roman Basie. I represent the plaintiff appellant, Autumn Atkins. We're here today, December, December 18, 2014. Because of a case that was filed in December of 2013, a complaint for breach of promise to marry filed by Autumn Atkins against Eric Edwards. Mr. Edwards filed a 619 motion to dismiss that was granted by the trial court due to the affirmative matter that was presented with regards to that motion to dismiss the affirmative matter that was presented by the plaintiff Autumn Atkins. We're here because this is somewhat a case of first impression. So now that the defense could find any case law that supported these positions. With three main arguments, number one, did the affirmative statement that the plaintiff Autumn Atkins may negate the cause of action completely. That's the standard that the Russo case applied that we indicated in our brief. The standard is that the affirmative matter that was presented to the court must negate the plaintiff's cause of action completely. The defendant's affidavit did not address the expenses that the plaintiff paid for in cash. The plaintiff submitted an expense law on her complaint. In that expense law, there were bank drafts, credit cards, and cash payments. Her affirmative statement that the funds used to pay for the wedding were a gift from her parents did not necessarily address the cash payments. The defendant even stated, quote, the bank drafts and credit cards were in her parents' names. The defendant's statement did not address where the cash was from. The defendant also acknowledged that the plaintiff had a bank account and had limited resources. Thus, this acknowledges that the cash could have been the plaintiff's. The affirmative matter also did not address who the damaged party was to the contracts. But isn't this how we determine actual damages sustained and who a harmed party is when a contract is breached? We look to see who is the damaged party under the contracts. If the parents' names were on the underlying contracts for the wedding expenses, then the parents sustained the damages. So it becomes very relevant. If the plaintiff, Autumn Atkins' name was on the underlying contracts, the dress receipts, the wedding rehearsal expenses, then it becomes very relevant. It's our position that the affirmative matter did not negate that the plaintiff herself was the harmed party because of the underlying contracts to each expense. And a third part to this argument that the affirmative matter did not completely negate the cause of action, the defendant argues that the expenditures made by her parents are not recoverable. I only want to point out to the court that that statement, that is not supported by the statute. There is nothing in the breach of promise to marry statute that indicates that expenditures made by a parent are not recoverable. It is silent on that. The second argument that I make in our brief is the claim barred because the source of funds was a gift. The statute, again, silent, does not address the issue of the source of the funds that are used for these damages to be calculated. When the source of funds was committed to the contract by the plaintiff's parents, those funds then became the property of the plaintiff. The defendant acknowledged in his brief on page 10 when they state, quote, the defendant was not in possession of the gifts. They remain the property of the plaintiff. The defendant is acknowledging that the gifts from the parent to their daughter are now property of the plaintiff. The defendant's support brief that they submitted to the trial court in support of their motion to dismiss stated, quote, the donor clearly intended to enrich the plaintiff by conveying property to her. The defendant admits that the plaintiff's parents conveyed property to the plaintiff, thus becoming her property, thus negating that the source of funds should be an issue. Counsel, let me, on the, you're hearing on your 2-619 motion. Is it in the record? Did you get to the point of whose name the contracts were in, whether it was the parents or their daughter? We did not, Your Honor. So that's not in the record? That testimony was not in the record. It was not presented yet to the trial court. The ruling, the trial court asked for a brief, a memorandum from both parties on the gift issue. I know the, I think in the appendix there's a list of the different type of expenses. There was a wedding expense log, yes, that was submitted. And that is in the record? That is in the record, yes. And there was an admission that the credit cards and the bank drafts were from the parents. And there was the affirmative statement by the plaintiff that the funds used were a gift from her parents. All right. The defendant also argued that the plaintiff lost the gift, and so the status quo was maintained. Well, if the plaintiff lost something that was hers, then actual damages have been sustained and can be proven. The status quo has not been maintained. We made an argument in our brief of replevin. We made this argument to the trial court. We included this argument in our appellate brief. In a replevin case, conditional gifts are treated the same way. If my grandmother gives me a ring and I give that ring to my fiancé, if the marriage does not happen, the fiancé is to give the ring back to me under the conditional gift. If we use the defense argument here that the source of the ring was a gift from my grandmother to me, and I have no action to recover that ring, then I would have no action to recover that ring back. But that's not the way we look at those cases. We allow the party to get the ring back. We don't address the source of those funds. And our third argument, if the court rules that there's no damages sustained because it was a gift and we've now maintained the status quo, the plaintiff is not harmed, then does the court err by not allowing the plaintiff's parents to seek recovery of their expenses? And isn't that the intent of the statute to determine the actual damages sustained? It is not clear under the statute whether a third party can bring an action to recover expenses under the statute. It's fairly silent on that issue. I'm going to use an example of a lease agreement. If you have a landlord and a tenant in a room together, and they're executing a lease agreement, and the landlord says, I will break you this apart, and the tenant says, I will pay you the first month's rent of a security deposit. And they say, yes, let's sign it, and they sign it. And the tenant turns to his father and says, I need you to pay the security deposit for me. At the termination of that lease, if there is a dispute on that security deposit, the father does not have the right to bring the course of action. It is the son that does. He is the party to the contract under the lease. That security deposit that was paid on his behalf is his property. And under Illinois law, under the Security Deposit Act, he has the right to bring an action against the landlord to recover that security deposit. If we use the defendant's arguments that it was a gift and the status quo was maintained, then the son would have no right to recover the security deposit from the landlord. What would be the purpose of that act? And finally, if we don't allow the parents to recover the expenses they paid on behalf of their daughter, then the parents can recover outside of the statute under other legal theories and ask for punitive damages and exemplary damages. And then we do not meet the intent of the statute. The intent of the statute is to limit the damages to those that are actually sustained and not allow other types of damages. If the parents are not allowed to bring this – to be a part of this cause of action, especially on the wedding expense law, then they have to sue outside of the statute, and therefore the damages become unlimited. And that is not the intention of the Illinois legislature when they drafted the statute. Thank you. Argument for the ad belief. Thank you, Your Honor. Good morning. Please support the counsel. I'm Winston Throckmorton, and I represent the appellee, Eric Edwards. The issue before the court this morning is whether the trial court committed an error when it dismissed plaintiff's cause because the plaintiff admitted in her affidavit that the source of the damages were indeed a gift from her parents. Well, our position is unequivocally no, the trial court did not err. The intent of the legislature, we believe, in this case, was to make the aggrieved party total under the breach of marriage contract. That is, the first party who is aggrieved will have a cause of action against the second party to the breach of contract of marriage. However, the legislature takes this and says that the aggrieved party must show actual damages. And what are actual damages? Well, there are various actual damages. As my counselor and counsel said, a ring, perhaps. Perhaps a honeymoon trip expense. Perhaps lost wages in anticipation of the nuptials. These are damages that were incurred by the plaintiff himself or herself. And I have to agree, and I'm given an opportunity to explain myself outside of my brief, that I agree with the appellant in that the defendant is never the source of the funds. That the appellee, I'm sorry, is never the source of the funds that the appellant wishes to recover. The appellant is the source of the funds. Now, when the appellant made the affirmative statement through her affidavit that these expenses in preparation for the wedding nuptials were indeed made by her parents, she said, this is a gift. A gift. A gratuitous transfer of property without consideration. Did she expend any money? Not to her knowledge, not to my knowledge, when she said this was a gift by my parents to me. No consideration was given. So, I begin to think, well, where are the damages that she herself sustained? Where are her actual damages? I can't find any. Counsel, let me ask you this. Let's say, I think there's no dispute in this case that the parents say they used their credit card to buy these services or goods. Let's say they would have put $10,000 in her bank account and said, we know you've got to pay rent, we know this wedding is going to be expensive, and we'll put $10,000, we're going to give you $10,000 and you can spend it however you want on the wedding or pay your rent or whatever you want to do. Does that make any difference? Not in my mind, Your Honor. I don't even see a transmutation of the property from the parents to the donor to the donee. I don't see that. In this case, or in the case that you just said, I still see it as a gift. So if someone brings a cause of action under this act, it has to be, and they have spent money. We need to trace the source of that money, and they can bring a cause of action if it's earned money, or maybe they sold something that they previously owned, but they cannot have a course of action if they have used money that was given to them or inherited. So we're going to have to trace what was the source of that money before they can bring a cause of action? Absolutely, Your Honor. I think that's the intent of the legislature. Actual damages. If I'm given something, I haven't suffered anything. I'm no worse off after the gift has gone than I was before I was given the gift. My status quo remains, and that's what I've said in my brief. So if I've gotten a gift, put it in the bank, and had it set in there, and I look at my bank statement every month, and it's got $10,000, and then I buy goods and services, and it's gone, I haven't lost anything? It depends on where that $10,000 came from, Your Honor.  Okay. And there is some case law, albeit very small in our state, but each one of these cases goes to the plaintiff earning that money her or himself, not being given that source of income to buy a Rolex watch or put on a marriage, honeymoon or rings or whatever, car gifts. Nothing has spoken to the gift in our state. And that's why we have to look, as Your Honor says, to where the source is. That's the only way we can determine if it's an actual damage to the plaintiff. And therefore, we do agree that the defendant can never be the source of the damage, of the source of the property in which the plaintiff wishes to recover. It has to be from her or himself. The intent of the legislature, I think, makes it clear that there are only, at this time, two parties to the marriage contract. The legislature is presumed to know what they're doing. And in the notice section of the statute, the agreed party is noticed to the breaching party. That's only two parties. We can't help it if third parties, aunts, parents, cousins, friends, give gifts and then the marriage nuptials and plans go south. It's a risk that the donor has made. Does this statute give that third party a recovery? It does not. Are there other legal remedies for that party, for those third parties? I'm not sure. But I think that the appellant is possibly trying to merge the replevant statute into our breach of promise statute. And that just doesn't work. There's no privity. Between the parents and the appellate in this. And, therefore, the parents, third party, stand outside. And as the appellant has framed these two issues, we believe that by the affirmative affidavit that the appellant filed with the court, the appellant negated her whole clause of action and barred her from bringing this actual damages, which she's known of, which she's suffered, none against the defendant, the appellant. And as we said, there might be another source of recovery in the replevant. I'm not sure. We're not going to go there. We didn't need to go there. Many times, the appellant has said, not only this morning, but also in their brief, Andrew Pye brief, the statute is silent. The statute is silent. The statute is silent because the legislator intended it to be that way. I believe we, in this 619 motion, court would presume every pleading in the appellant's favor. And I believe that this court should give deference to the trial court's decision. And in that regard, we would ask that the trial court be affirmed. Thank you. Thank you, counsel. Rebuttal? Rebuttal? Thank you. The intent, as stated by the appellee of the statute, is not to make the aggrieved party whole. I want to draw your attention to the very first sentence of Section 9 of the statute, of the breach of promise to Mary statute. That very first sentence of Section 9 states, This act shall be liberally construed to effectuate the objects and purposes thereof, and the public policy as herein declared. The object and the purpose is to eliminate unjust enrichment. It is to eliminate the fear of blackmail. It is to eliminate the exorbitant damages. Those terms are used in the statute. That is the intent of the statute. It's to limit the damages to the actual damages sustained. It does not use the words to make the aggrieved party whole. So the intent, I think, is clear. I want to give you some statistics. We talk about source of funds. Now, we argue about source of funds. According to the Association of Bridal Consultants, 2.3 million couples a year are being married in the United States. There are 6,200 weddings every day. $72 billion is being spent annually in the United States on weddings. What's the source? Historically, in the United States, it was the bride's parents, and they paid for everything. That is changing. Today, 17% of weddings are paid by the bride's parents. They pay all of the wedding. 30% are paid by the bride and the groom themselves from their own bank accounts. And 53% is a mixture. It's a mixture of the bride, the groom, the bride's parents, the groom's parents. I think that's why this issue is before the court today. This mixture of payment is what's brought us here. And finally, I want to bring your attention to Section 10 of the statute. It's one sentence. This act shall become effective on January 1, 1948. We sit here 66 years later talking about the intent of the statute. We ask the court today to reverse the trial court's order granting the defendant of Helley's motion to dismiss. And I leave you with a question. Who do you think paid for weddings in 1948? Thank you. Thank you, counsel. All right. Counsel, we'll take this under advice. But I do have to tell you, on your last comment, in preparing for oral argument, in talking with my newest law clerk, who took the bar exam in July, and this involves the Breach of Promise Act, the Bar Review Court says don't worry about this on the bar exam, this old act. There's no litigation on it. So, counsel, you're proving them wrong here today. Maybe they'll start teaching on the bar exam again. So we'll take a recess starting 11.